**RECORD NO. 12-5130**

**ORAL ARGUMENT HAS NOT YET BEEN SCHEDULED**

In The

# United States Court of Appeals
## For The District of Columbia Circuit

# OLGA HERNANDEZ,

*Plaintiff – Appellant,*

**v.**

# CARLOS GUTIERREZ,
## Secretary, U.S. Department of Commerce,

*Defendant – Appellee.*

## ON APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

_____

## BRIEF OF APPELLANT

_____

**Alan Lescht**
**ALAN LESCHT & ASSOCIATES, P.C.**
**1050 17th Street, N.W., Suite 400**
**Washington, D.C.  20036**
**(202) 463-6036**

*Counsel for Appellant*

# CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES

## I. Parties

The Appellant is Olga Hernandez, who was the plaintiff in the District Court.  The Appellee is Carlos Gutierrez, Secretary of the United States Department of Commerce, who was the defendant below.  There are no amicus curiae.

## II. Rulings Under Review

The ruling under review is the March 22, 2012 Order and Memorandum Opinion of the Honorable Richard J. Leon in *Olga Hernandez v. Carlos M. Gutierrez*, Civil Action No. 08-1716.

## III. Related cases

This case has not previously been before this Court and there are no currently pending related cases.

# **TABLE OF CONTENTS**

**Page**

CERTIFICATE AS TO PARTIES, RULINGS AND RELATED CASES ...............i

TABLE OF CONTENTS........................................................... ii

TABLE OF AUTHORITIES ....................................................iv

JURISDICTIONAL STATEMENT .........................................1

STATEMENT OF THE ISSUES...........................................1

STATUTES AND REGULATIONS .......................................2

STATEMENT OF THE FACTS ............................................9

      Change in Status from Nonprobationary to Probationary ...........................10

      Detail to Chemical and Biological Controls Division..................................11

      Ms. Hernandez's Performance at BIS and CBC ...........................................13

SUMMARY OF THE ARGUMENT ..................................16

ARGUMENT ...................................................................17

      I.      Standard of Review .........................................17

      II.     Ms. Hernandez has a *Prima Facie* Case of Retaliation ......................18

      III.    The Reasons Provided by the Agency for its Actions Against Ms. Hernandez were False and Pretext to Mask Unlawful Retaliation .................................................19

            A.      Detail to CBC...........................................20

            B.      Change in Status from Nonprobationary to Probationary ........22

C.     Termination of Employment......................................................23

CONCLUSION ..........................................................................................25

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF FILING AND SERVICE

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Aka v. Washington Hosp. Ctr.*,
    156 F.3d 1284 (D.C. Cir. 1998)...................................................................18

*Anderson v. Liberty Lobby*, *Inc.*,
    477 U.S. 242 (1986)....................................................................................17

*Burlington N. & Santa Fe Ry. Co. v. White*,
    548 U.S. 53 (2006).......................................................................................18

*Celotex Corp. v. Catrett*,
    477 U.S. 317 (1986)....................................................................................17

*Czekalski v. Peters*,
    475 F.3d 360 (D.C. Cir. 2007).............................................................17, 18

*Forman v. Small*,
    350 U.S. App. D.C. 24, 271 F.3d 285 (D.C. Cir. 2001)...............................18

*Mitchell v. Baldridge*,
    759 F.2d 80 (D.C. Cir. 1985).......................................................................18

*Park v. Howard*,
    71 F.3d 904 (D.C. Cir. 1995).......................................................................23

*Price v. Thompson*,
    380 F.3d 209 (4th Cir. 2004) ................................................................18, 20

*Reeves v. Sanderson Plumbing Products*, *Inc.*,
    530 U.S. 133 (2000)...............................................................................18, 20

*Chief Authorities are Designated with an Asterisk*

*Scott v. Kempthorne*,
    191 Fed. Appx. 622,
    2006 WL 1980219 (10th Cir. 2006) ............................................................18

*\*St. Mary's Honor Center v. Hicks*,
    509 U.S. 502 (1993)....................................................................................20

*\*Texas Dep't of Community Affairs v. Burdine*,
    450 U.S. 248 (1981)....................................................................................19

*Waterhouse v. District of Columbia*,
    298 F.3d 989 (D.C. Cir. 2002)....................................................................17

*\*Wiley v. Glassman*,
    511 F.3d 151 (D.C. Cir. 2007)..............................................................22, 23

## **STATUTES**

5 U.S.C. § 3321 ........................................................................................3, 11

28 U.S.C. § 636(c)(3) ....................................................................................17

28 U.S.C. § 1291 .............................................................................................1

28 U.S.C. § 1331 .............................................................................................1

39 U.S.C. §§ 101 *et. seq.*................................................................................7

42 U.S.C. § 2000e–2 .......................................................................................2

42 U.S.C. § 2000e–3 .......................................................................................2

## **RULE**

Fed. R. Civ. P. 56(c)......................................................................................17

## **REGULATIONS**

5 C.F.R. § 315.401 ................................................................................4, 22

5 C.F.R. § 315.501 .....................................................................................7

5 C.F.R. § 315.801 ................................................................................7, 22

5 C.F.R. § 315.904 .....................................................................................8

5 C.F.R. § 315.907 ..................................................................................8, 11

## JURISDICTIONAL STATEMENT

The United States District Court had jurisdiction of this case pursuant to 28 U.S.C. § 1331 because this case arises under federal law.

This Court has jurisdiction of the instant appeal pursuant to 28 U.S.C. § 1291, as the decision appealed from is a final order by the United States District Court for the District of Columbia, entered March 22, 2012.  Ms. Hernandez timely filed her notice of appeal on April 17, 2012.

## STATEMENT OF THE ISSUES

The issues to be determined on this appeal are:

1.      Whether Appellee retaliated against Appellant when it detailed her to the Chemical and Biological Controls Division;

2.      Whether Appellant's detail to the Chemical and Biological Controls Division was an adverse action;

3.      Whether Appellee retaliated against Appellant when it changed her employment status from nonprobationary to probationary;

4.      Whether Appellant failed to exhaust her change of employment status claim;

5.      Whether Appellee retaliated against Appellant when it terminated her employment; and

6.      Whether the court erred when it granted summary judgment dismissing the case.

## STATUTES AND REGULATIONS

**42 U.S.C. § 2000e–2.  Unlawful employment practices**

(a) Employer practices

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

**42 U.S.C. § 2000e–3.  Other unlawful employment practices**

(a) Discrimination for making charges, testifying, assisting, or participating in enforcement proceedings

It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, for an employment agency, or joint labor-management committee controlling apprenticeship or other training or retraining, including on-the-job training programs, to discriminate against any individual, or for a labor organization to discriminate against any

2

member thereof or applicant for membership, because he has opposed any practice

made an unlawful employment practice by this subchapter, or because he has made

a charge, testified, assisted, or participated in any manner in an investigation,

proceeding, or hearing under this subchapter.

## 5 U.S.C. § 3321.  Competitive service; probationary period

(a) The President may take such action, including the issuance of rules, regulations,

and directives, as shall provide as nearly as conditions of good administration

warrant for a period of probation--

(1) before an appointment in the competitive service becomes final; and

(2) before initial appointment as a supervisor or manager becomes final.

(b) An individual--

(1) who has been transferred, assigned, or promoted from a position to a

supervisory or managerial position, and

(2) who does not satisfactorily complete the probationary period under subsection

(a)(2) of this section,

shall be returned to a position of no lower grade and pay than the position from

which the individual was transferred, assigned, or promoted. Nothing in this

section prohibits an agency from taking an action against an individual serving a

probationary period under subsection (a)(2) of this section for cause unrelated to

supervisory or managerial performance.

(c) Subsections (a) and (b) of this section shall not apply with respect to appointments in the Senior Executive Service or the Federal Bureau of Investigation and Drug Enforcement Administration Senior Executive Service.

**5 C.F.R. § 315.401.  Reinstatement**

(a) Agency authority. Subject to part 335 of this chapter and paragraph (b) of this section, an agency may appoint by reinstatement to a competitive service position a person who previously was employed under career or career-conditional appointment (or equivalent).

(b) Time limit. There is no time limit on the reinstatement eligibility of a preference eligible or a person who completed the service requirement for career tenure. Except as provided in paragraph (c) of this section, an agency may reinstate a nonpreference eligible who has not completed the service requirement for career tenure only within 3 years following the date of separation.  This time limit begins to run from the date of separation from the last position in which the person served under a career appointment, career-conditioned appointment, indefinite appointment in lieu of reinstatement, or an appointment under which he or she acquired competitive status.

(c) Extension of time limit. Intervening service of the following types extends the 3-year limit on reinstatement of eligibility of a nonpreference eligible who has not completed the service requirement for career tenure:

4

(1) Employment in Federal competitive service positions under temporary, term, indefinite, or other nonpermanent appointment.

(2) Employment in Federal excepted, nonappropriated fund, or Senior Executive Service positions in the executive branch;

(3) Employment in the Federal judicial branch or in the executive or judicial branches of the insular possessions of the United States;

(4) Employment in Federal legislative branch;

(5) Employment in an international governmental organization or a territorial, State, county, municipal, or foreign government in a position in which the agency determines that the proposed appointee acquired valuable training and experience for the position to be filled;

(6) A substantially full-time training course in any educational institution of recognized standing when the agency finds that the proposed appointee acquired valuable training or experience for the position to be filled;

(7) Compulsory service on work of national importance under civilian direction as required by the Military Selective Service Act;

(8) Active military duty terminated under honorable conditions;

(9) Service with the District of Columbia Government prior to January 1, 1980.  In addition, for an employee on the District Government rolls on December 31, 1979, who was converted on January 1, 1980, to the District of Columbia merit personnel

system, continuous District Government service after that date also extends the 3-year period;

(10) Periods of nonemployement during which a person is eligible for injury compensation under the Office of Workers' Compensation Programs;

(11) Periods of nonemployment during which a person receives disability retirement under the Civil Service or Federal Employees Retirement System;

(12) Employment by a nonfederal organization when the person's function was transferred to the nonfederal organization on a contract basis or by law or executive order;

(13) Volunteer service and training required prior to actual enrollment as a volunteer with Peace Corps, VISTA, and other programs of the Corporation for National and Community Service if it begins within the period the person is eligible for reinstatement; and

(14) Periods of overseas residence during which a spouse or unmarried child, under 21 years of age, of a member of the Armed Forces or of a Federal civilian employee is accompanying that individual on official assignment to an overseas post of duty.  Overseas posts of duty are duty locations outside the 50 States of the United States, the District of Columbia, Guam, Puerto Rico, and the Virgin Islands.

**5 C.F.R. § 315.801.  Probationary period; when required**

(a) The first year of service of an employee who is given a career or career-conditional appointment under this part is a probationary period when the employee:

(1) Was appointed from a competitive list of eligibles established under subpart C of this part;

(2) Was reinstated under subpart D of this part unless during any period of service which affords a current basis for reinstatement, the employee completed a probationary period or served with competitive status under an appointment which did not require a probationary period.

(b) A person who is:

(1) Transferred under § 315.501; or

(2) Promoted, demoted, or reassigned; before he completed probation is required to complete the probationary period in the new position.

(c) A person who is reinstated from the Reemployment Priority List to a position in the same agency and the same commuting area does not have to serve a new probationary period, but, if separated during probation, is required to complete the probationary period in the new position.

(d) Upon noncompetitive appointment to the competitive service under the Postal Reorganization Act (39 U.S.C. § 101 *et seq*.), an employee of the Postal Career

7

Service (including substitute and part-time flexible) who has not completed 1 year of Postal service, must serve the remainder of a 1-year probationary period in the new agency.

(e) A person who is appointed to the competitive service either by special appointing authority or by conversion under subparts F or G of this part serves a 1-year probationary period unless specifically exempt from probation by the authority itself.

**5 C.F.R. § 315.907.  Failure to complete the probationary period**

(a) Satisfactory completion of the prescribed probationary period is a prerequisite to continued service in the position.  An employee who, for reasons of supervisory or managerial performance, does not satisfactorily complete the probationary period is entitled to be assigned, except as provided in paragraph (b) of this section, to a position in the agency of no lower grade and pay than the one the employee left to accept the supervisory or managerial position.

(b) A nonsupervisory or nonmanagerial employee who is demoted into a position in which probation under § 315.904 is required and who, for reasons of supervisory or managerial performance, does not satisfactorily complete the probationary period is entitled to be assigned to a position at the same grade and pay as the position in which he or she was serving probation.  The employee is eligible for repromotion in accordance with agency promotion policy.

8

(c) The agency must notify the employee in writing that he or she is being assigned in accordance with this section.

## STATEMENT OF THE FACTS

Ms. Hernandez is a Hispanic female originally from Puerto Rico.  JA p. 130, Hernandez dec. ¶ 2.  Her education and experience is in electrical engineering. JA p. 130, Hernandez dec. ¶ 3.

She was employed as a General Engineer, GS-801-12, with the Nuclear and Missile Technology Division (NMTD), Office of Nonproliferation and Treaty Compliance, Office of Assistant Secretary for Export Administration, Bureau of Industry and Security (BIS), U.S. Department of Commerce from May 15, 2006 to April 25, 2007. JA p. 130, Hernandez dec. ¶ 4.

In or about October 2006, she contacted the agency's Office of Civil Rights to complain about workplace harassment based on national origin and sex.  She filed a claim of workplace harassment on or about December 7, 2006. JA p. 130, Hernandez dec. ¶ 5.

On or about December 14, 2006, she had a meeting with Steven Goldman, Director of the Office of Nonproliferation and Treaty Compliance, regarding her concerns of discrimination and harassment. JA p. 130, Hernandez dec. ¶ 6.

Ms. Hernandez believes the agency retaliated against her for reporting discrimination and harassment. JA p. 130, Hernandez dec. ¶ 7.  The agency has a

history of retaliating against employees who file EEO complaints. JA p. 130, Hernandez dec. ¶ 8; JA p. 139, Little dep. at 12-17.

After Ms. Hernandez reported her concerns, her co-workers started talking about her.  Ramses Routier overheard people say that she was in trouble. JA p. 130, Hernandez dec. ¶ 9; JA p. 147, Routier dep. at 6-13.

On January 3, 2007, the agency detailed her to the Chemical and Biological Controls Division (CBC) even though her experience and background was in electrical engineering. JA p. 130, Hernandez dec. ¶ 10.

In or about April 2007, the agency changed her status from nonprobationary to probationary.  JA p. 130, Hernandez dec. ¶ 11.

On April 25, 2007, the agency terminated her employment. JA p. 130, Hernandez dec. ¶ 12.

### Change in Status from Nonprobationary to Probationary

Prior to working at BIS, Ms. Hernandez was employed by the United States Patent and Trademark Office (USPTO) as a Patent Examiner in the electrical and mechanical engineering field, from October 13, 1998, to November 14, 2005.  JA p. 130, Hernandez dec. ¶ 14.

While employed by PTO, she completed her service requirement for career tenure from October 13, 1998 to October 13, 2001.  JA p. 130, Hernandez dec. ¶ 15; JA p. 157, Notification of Personnel Action (original).

10

She was initially hired by BIS in a nonprobationary status as a reinstatement under 5 CFR § 315.401.  JA p. 130, Hernandez dec. ¶ 16; JA p. 157, Notification of Personnel Action (original).  A few weeks before her termination from BIS, the agency changed her status from nonprobationary to probationary by claiming that she was hired under the delegated examining unit (DEU) announcement.  JA p. 130, Hernandez dec. ¶ 17; JA p. 159, Notification of Personnel Action (revised); JA p. 161, Emails detailing the change in status.

Ms. Hernandez's former supervisor, Steven Clagett, states in his declaration that she was terminated in accordance with 5 U.S.C. § 3321 and 5 C.F.R. § 315.907. JA p. 98 at 7.  However, the statute and regulation he cites concern probation on initial appointment to a supervisory or managerial position.  Ms. Hernandez's position at BIS was not supervisory or managerial.  JA p. 130, Hernandez dec. ¶ 18.

Ms. Hernandez believes that the agency changed her status from nonprobationary to probationary after she complained about harassment so that it could terminate her employment more easily.  JA p. 130, Hernandez dec. ¶ 19.

### Detail to Chemical and Biological Controls Division

After Ms. Hernandez complained to the agency about discrimination and harassment the agency detailed her to the Chemical and Biological Controls Division (CBC).  JA p. 130, Hernandez dec. ¶ 20.  She requested a transfer outside

11

BIS, however Mr. Goldman advised her that he did not have authority to transfer her outside of BIS.  JA p. 130, Hernandez dec. ¶ 21.

She did not want to be detailed to CBC because her education and background is in electrical engineering.  JA p. 130, Hernandez dec. ¶ 22.

At the time Ms. Hernandez was detailed to CBC, there were positions available in the encryption and radar departments of BIS.  Michael Pender told her about the position in encryption.  Ramses Routier told her about the position in radar.  These positions would have been more suited to her background and experience.  JA p. 130, Hernandez dec. ¶ 23.

Ms. Hernandez sent an email to Christopher Padilla, Assistant Secretary of Commerce for Export Administration, requesting a meeting but he did not want to get involved.  JA p. 130, Hernandez dec. ¶ 24.

Because the agency did not give her a choice, Ms. Hernandez felt that she had to accept the detail in order to get away from the hostile work environment. JA p. 130, Hernandez dec. ¶ 25.

The detail to CBC required Ms. Hernandez to learn a whole new set of commodities.  JA 130, Hernandez dec. ¶ 26.

The detail to CBC required Ms. Hernandez to work with viruses, bacteria and chemical compounds.  She does not have familiarity with viruses, bacteria and chemical compounds because her background is in electrical engineering.  It is

much easier for her to analyze microprocessor speeds in a computer system or wavelengths for radar transceivers than it is for her to understand biological organisms or chemical nomenclature.  JA p. 130, Hernandez dec. ¶ 27.

For example, the food industry uses several different names to identify certain chemical compounds.  Monosodium glutamate can be referred to as MSG, sodium glutamate, or flavor enhancer 621.  Since she had no previous experience with chemical compounds, it was difficult for her to determine the chemical compound being identified.  JA p. 130, Hernandez dec. ¶ 28.

The other licensing officers at CBC had backgrounds that were better suited to the job.  The licensing officers included two chemical engineers, a chemist and two microbiologists.  The Director, Elizabeth Scott, is also a chemical engineer. JA p. 130, Hernandez dec. ¶ 29; JA p. 165, Scott dep. at 5-6.

## Ms. Hernandez's Performance at BIS and CBC

Mr. Clagett was Ms. Hernandez's first line supervisor from May 15, 2006 until the time when the agency detailed her to CBC.  JA p. 130, Hernandez dec. ¶ 30.  While she was at CBC, Ms. Hernandez was supervised by Ms. Scott.  JA p. 130, Hernandez dec. ¶ 31.

The agency did not provide her with adequate training to perform the tasks assigned to her.  JA p. 130, Hernandez dec. ¶ 32.

When Ms. Hernandez was transferred to CBC, she learned for the first time that there were written materials on how to use the various systems at BIS.  She was not provided with these materials when she worked at NMTD.  JA p. 130, Hernandez dec. ¶ 33.

There are no manuals explaining how to use ECASS, the electronic licensing system.  JA p. 130, Hernandez dec. ¶ 34; JA p. 173, Clagett dep. at 32-33.

Ms. Hernandez did not receive training on how to identify cases that require "report 19."  Other employees in her department also had difficulty identifying cases that required report 19.  JA p. 130, Hernandez dec. ¶ 35; JA p. 180, Emails between Hernandez and Roberts.

Although one of the most critical skills of her job was to review intelligence information to determine whether a license was required, Ms. Hernandez was never taught how to interpret, understand, analyze and/or consider intelligence information.  JA 130, Hernandez dec. ¶ 36.

Ms. Scott required specific research strategies and methodologies for the cases to be processed in her department.  Ms. Hernandez was not taught these research strategies and methodologies when she worked under Mr. Clagett.  JA p. 130, Hernandez dec. ¶ 37.

14

Ms. Hernandez often did not receive timely feedback from Mr. Clagett regarding her cases, which slowed the processing of these cases.  JA p. 130, Hernandez dec. ¶ 38; JA p. 182, Emails from Hernandez to Clagett.

Other employees failed to provide her with necessary information to process her cases.  JA p. 130, Hernandez dec. ¶ 39; JA p. 185, Emails between Hernandez and Santos.

It was common practice for both new and experienced employees to ask other employees for assistance with performing assignments.  Ms. Hernandez consulted with her coworkers but she did not ask them to do her work for her.  JA p. 130, Hernandez dec. ¶ 40.

Several times Ms. Hernandez requested feedback from Mr. Clagett on her performance and he indicated that everything was fine.  JA p. 130, Hernandez dec. ¶ 41.

In October 2006, Ms. Hernandez received her FY 2006 performance appraisal from Mr. Clagett.  Mr. Clagett rated her performance as Level 3.  He described her performance as "good and appropriate for a GS-12 with only a partial year of experience."  JA p. 130, Hernandez dec. ¶ 42; JA p. 82, Performance Management Record at 14.

Ms. Hernandez believes that Mr. Clagett should have rated her performance higher than Level 3.  JA p. 130, Hernandez dec. ¶ 43.  Mr. Clagett never provided

15

her with the calculations required by the performance elements 1 and 3 even though she requested a formal evaluation of her performance.  JA p. 130, Hernandez dec. ¶ 44; JA p. 188, Performance Plan and Appraisal Record for Elements 1 and 3; JA p. 18, Request for Remedies.

Mr. Clagett never told Ms. Hernandez that her performance was below expectations.  JA p. 130, Hernandez dec. ¶ 45.

Mr. Clagett never told Ms. Hernandez that she was in danger of losing her job or that if she did not bring my performance up to a certain level, she would be fired.  JA p. 130, Hernandez dec. ¶ 46; JA p. 173, Clagett dep. at 20-21.

Ms. Scott never advised Ms. Hernandez that she was going to rate her performance as unsatisfactory or below expectations.  JA 130, Hernandez dec. ¶ 47; JA p. 165, Scott dep. at 24-25.

Neither Mr. Clagett nor Ms. Scott kept track of other employees' mistakes. JA p. 130, Hernandez dec. ¶ 48; JA p. 173, Clagett dep. at 13; JA p. 165, Scott dep. at 21-22.

## SUMMARY OF THE ARGUMENT

The District Court erred when it granted summary judgment.  Ms. Hernandez has a *prima facie* case of retaliation.  The agency's reasons for detailing her to CBC, changing her status from nonprobationary to probationary and terminating her employment are false and pretext to mask its unlawful

16

discrimination based on retaliation.  In addition, the District Court erred when it concluded that the detail to CBC was not an adverse action and that Ms. Hernandez failed to exhaust her change of employment status claim.

## ARGUMENT

### I.
### Standard of Review

This Court reviews a grant of summary judgment *de novo*.  *Czekalski v. Peters*, 475 F.3d 360, 362-63 (D.C. Cir. 2007); *Waterhouse v. District of Columbia*, 298 F.3d 989, 991 (D.C. Cir. 2002); *see* 28 U.S.C. § 636(c)(3). Summary judgment is appropriate only if "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).  A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party," *Anderson*, 477 U.S. at 248, and a moving party is entitled to judgment as a matter of law only if the nonmoving party "fails to make a showing sufficient to establish the existence of an essential element to that party's case, and on which that party will bear the burden of proof at trial," *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The Court must view the evidence in the light most favorable to the nonmoving party (here, Ms. Hernandez), draw all reasonable inferences in her favor, and eschew making credibility determinations or weighing the evidence.  *Czekalski*, 475 F.3d

17

at 363; *see Reeves v. Sanderson Plumbing Prods.*, 530 U.S. 133 (2000); *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1288 (D.C. Cir. 1998) (en banc).

## II.
## Ms. Hernandez has a *Prima Facie* Case of Retaliation

To establish a prima facie case of retaliation, a plaintiff must show that (1) she engaged in a statutorily protected activity, (2) a reasonable employee would have found the challenged action materially adverse, and (3) there existed a causal connection between the protected activity and the materially adverse action. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 126 S. Ct. 2405, 2415-16, 165 L. Ed. 2d 345 (2006); *see also Scott v. Kempthorne*, 191 Fed. Appx. 622, 2006 WL 1980219, at *3 (10th Cir. 2006). The plaintiff's burden is not great: the plaintiff "merely needs to establish facts adequate to permit an inference of retaliatory motive." *Forman v. Small*, 350 U.S. App. D.C. 24, 271 F.3d 285, 299 (D.C. Cir. 2001).

The causal connection may be shown by evidence that the employer had knowledge of the employee's protected activity, and that the adverse personnel action took place shortly after that activity. *Mitchell v. Baldridge*, 759 F.2d 80, 86 (D.C. Cir. 1985). An employer's knowledge coupled with an adverse action taken at the first opportunity satisfies the causal connection element of the prima facie case. *See Price v. Thompson*, 380 F.3d 209, 213 (4th Cir. 2004).

In this case, the agency's adverse actions against Ms. Hernandez immediately followed Ms. Hernandez's complaints to EEO and management regarding discrimination and harassment.  Ms. Hernandez met with Mr. Goldman regarding her claims of discrimination and harassment in December 2006.  Less than a month later, in January 2007, the agency detailed her to CBC even though the position there was not suited to her background and experience.  A few months later, the agency changed Ms. Hernandez's status from nonprobationary to probationary and then terminated her employment.

Ms. Hernandez has also established a causal link between her complaints and the agency's adverse actions.  After she complained about workplace harassment, her co-workers started talking about her and there were rumors that she was in trouble.  The agency immediately took adverse actions against her culminating in her termination.

### III.
### The Reasons Provided by the Agency for its Actions Against Ms. Hernandez Were False and Pretext to Mask Unlawful Retaliation

The plaintiff can establish pretext in one of two ways.  She can show that a discriminatory reason more likely motivated the defendant, or she can show that the defendant's proffered explanation is unworthy of credence.  *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981). Essentially, the fact finder must be persuaded by the plaintiff that the defendant's articulated reason

was false and that its real reason was discriminatory. *St. Mary's Honor Center v. Hicks*, 509 U.S. 502, 515 (1993). A plaintiff's *prima facie* case, coupled with probative evidence "that the employer's explanation is false," would counsel against granting the employer summary judgment unless the employer presented other strong evidence from which "no reasonable factfinder could conclude" that there was discrimination. *Price v. Thompson*, 380 F.3d 209, 214 (4th Cir. 2004) *quoting Reeves v. Sanderson Plumbing Products*, *Inc.*, 530 U.S. 133, 148, 149 (2000).

In this case, the agency's reasons for detailing Ms. Hernandez to CBC, changing her status to probationary and terminating her employment are unworthy of credence. The agency has not asserted legitimate nondiscriminatory reasons for taking adverse actions against Ms. Hernandez.

A.    Detail to CBC

The District Court erred when it found that the detail to CBC was not an adverse action. The facts show that the detail to CBC was ill-suited to Ms. Hernandez's background and education which affected her performance.

Ms. Hernandez's background and education is in electrical engineering. The detail to CBC required her to learn a whole new set of commodities. She had to work with viruses, bacteria and chemical compounds. She was not familiar with viruses, bacteria and chemical compounds because her background is in electrical

20

engineering.  It is much easier for her to analyze microprocessor speeds in a computer system or wavelengths for radar transceivers than it is for her to understand biological organisms or chemical nomenclature.

For example, the food industry uses several different names to identify certain chemical compounds.  Monosodium glutamate can be referred to as MSG, sodium glutamate, or flavor enhancer 621.  Since Ms. Hernandez had no previous experience with chemical compounds, it was difficult for her to determine the chemical compound being identified.

Moreover, the other licensing officers at CBC had backgrounds that were better suited to the job.  The licensing officers included two chemical engineers, a chemist and two microbiologists.  The Director, Elizabeth Scott, is also a chemical engineer.

In addition, at the time the agency detailed Ms. Hernandez to CBC, there were positions available in the encryption and radar departments of BIS that were more suited to Ms. Hernandez's background and experience.  However, because the agency did not give Ms. Hernandez a choice, she felt she had to accept the detail in order to get away from the hostile work environment.  Ms. Hernandez can hardly be said to have agreed to the detail when the agency gave her no choice in the matter.

B.     <u>Change in Status from Nonprobationary to Probationary</u>

The District Court erred when it concluded that the agency provided a legitimate, non-discriminatory reason for changing Ms. Hernandez's status from nonprobationary to probationary.  Contrary to the District Court's conclusions, the agency did not offer a satisfactory explanation for changing Ms. Hernandez's status.

The agency initially hired Ms. Hernandez in a nonprobationary status as a reinstatement under 5 C.F.R. § 315.401.  Under 5 C.F.R. § 315.801, she was not required to complete a probationary period as a General Engineer because she had previously completed a probationary period when she worked as a Patent Examiner.  Thus, the agency's claim that the original classification was not in accordance with agency regulations is false and a pretext for discrimination.  The change was not made to correct a mistake.  The change was made to enable the agency to terminate Ms. Hernandez quickly.

The District Court also erred when it concluded that Ms. Hernandez failed to exhaust her retaliation claim regarding her change in status.  The claim regarding the change in status is not a new claim but rather a detail of Ms. Hernandez's claim that the agency wrongfully terminated her.  Ms. Hernandez's claim regarding her change of status is related to her wrongful termination claim and/or could have been expected to grow out of that claim.  *See Wiley v. Glassman*, 511 F.3d 151,

160 (D.C. Cir. 2007) finding that the lower court erred when it struck a claim that could have been reasonably expected to grow out of appellant's earlier complaint.

Moreover, the administrative investigation included documents concerning Ms. Hernandez's change of status: the original and revised notifications of personnel action, JA p. 157 and 159, and emails detailing the change in status, JA p. 161.  As explained in *Park v. Howard*, 71 F.3d 904, 907 (D.C. Cir. 1995), in order for a charge to be reasonably related to a filed charge, it must "at a minimum . . . arise from the investigation that can reasonably be expected to follow the charge of discrimination."  Since the investigation in this matter included the change of status documents, it cannot be said that the agency did not have the opportunity to resolve Ms. Hernandez's claim administratively.  *Wiley*, 311 F.3d at 160.

## C.     Termination of Employment

The District Court erred when it concluded that Ms. Hernandez did not produce evidence rebutting the agency's legitimate, nondiscriminatory reason for terminating her employment.  The agency did not have a legitimate nondiscriminatory reason for terminating Ms. Hernandez's employment.

Before she complained about workplace harassment, Ms. Hernandez was performing at a satisfactory level as evidenced by her FY 2006 performance

23

evaluation where she was rated at Level 3. Mr. Clagett described her performance as "good and appropriate for a GS-12 with only a partial year of experience."

Prior to the day of her termination, the agency never advised Ms. Hernandez that her performance was unsatisfactory. Mr. Clagett never told Ms. Hernandez that her performance was below expectations, that she was in danger of losing her job or that if she did not bring her performance up to a certain level she would be fired. Ms. Scott never advised Ms. Hernandez that she was going to rate her performance as unsatisfactory or below expectations. Neither Mr. Clagett nor Ms. Scott kept track of other employees' mistakes. In addition, there is evidence that Ms. Hernandez was not provided with appropriate training and that Mr. Clagett failed to give Ms. Hernandez timely feedback.

Thus, contrary to the District Court's conclusions, Ms. Hernandez produced sufficient evidence rebutting the agency's alleged nondiscriminatory reasons for terminating her employment.

## <u>CONCLUSION</u>

Based on the foregoing, Appellant respectfully requests that this Honorable

Court reverse the final judgment of the District Court and deny the Department of

Commerce's motion for summary judgment.

Respectfully submitted,

/s/ Alan Lescht
ALAN LESCHT & ASSOCIATES, P.C.
Alan Lescht, Esq.
1050 17th Street, N.W., Suite 400
Washington, D.C.  20036
202-463-6036

## <u>CERTIFICATE OF COMPLIANCE</u>

1.     This brief complies with the type-volume limitation of Fed. R. App. P.
       28.1(e)(2) or 32(a)(7)(B) because:

       [ X ] this brief contains [*5,109*] words, excluding the parts of the brief
       exempted by Fed. R. App. P. 32(a)(7)(B)(iii), *or*

       [    ] this brief uses a monospaced typeface and contains [*state the number
       of*] lines of text, excluding the parts of the brief exempted by Fed. R. App. P.
       32(a)(7)(B)(iii).

2.     This brief complies with the typeface requirements of Fed. R. App. P.
       32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

       [ X ] this brief has been prepared in a proportionally spaced typeface using
       [*Microsoft Word 2007*] in [*14pt Times New Roman*]; *or*

       [    ] this brief has been prepared in a monospaced typeface using [*state
       name and version of word processing program*] with [*state number of
       characters per inch and name of type style*].


Dated: <u>December 10, 2012     </u>          <u>/s/ Alan Lescht          </u>
                                              *Counsel for Appellant*

## <u>CERTIFICATE OF FILING AND SERVICE</u>

I hereby certify that on this 10th day of December, 2012, I caused this Brief

of Appellant to be filed electronically with the Clerk of the Court using the

CM/ECF System, which will send notice of such filing to the following registered

CM/ECF users:

> Carl E. Ross
> R. Craig Lawrence
> OFFICE OF THE U.S. ATTORNEY
> 555 4th Street, N.W.
> Washington, D.C.  20530
> (202) 514-7159
>
> *Counsel for Appellee*

I further certify that on this 10th day of December, 2012, I caused the

required copies of the Brief of Appellant to be hand filed with the Clerk of the

Court.

> /s/ Alan Lescht
> *Counsel for Appellant*